UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————————
RIVINGTON'S ORCHARD, LLC,
D/B/A CORNER GROCERS,
                         Plaintiff,

            -v-

AMERICAN FIRE AND CASUALTY
COMPANY,
                         Defendant.
——————————————————————————

21-CV-1727 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Rivington's Orchard, LLC ("Rivington") brings suit against its insurer, American Fire and Casualty Company ("American Fire"), following a fire that shut down Rivington's business for months.  The parties principally dispute whether their insurance agreement (the "Policy") affords coverage for income that Rivington would have earned after the "period of restoration" following the fire ended.  American Fire moves for partial summary judgment on this issue; Rivington cross moves for partial summary judgment.  For the reasons that follow, American Fire's motion is granted and Rivington's motion is denied.

**I.    Background**

    The following facts are undisputed.

    Rivington, doing business as Corner Grocers, operates a convenience store located at 140 Orchard Street in New York.  (*See* Dkt. No. 19 ¶ 1.)  American Fire is Rivington's property insurer.  (*See* Dkt. No. 19 ¶ 7.)

    In October 2018, Rivington entered into a contract with Lure Outdoor LLC ("Lure"). (*See* Dkt. No. 19 ¶ 2.)  Rivington allowed Lure to display advertisements on Rivington's street-facing windows.  In return, Lure paid Rivington a monthly fee.  (*See* Dkt. No. 19 ¶ 3.)  The

contract had a putative ten-year term beginning in January 2019, but the contract entitled either party to terminate the arrangement on notice after one year. (*See* Dkt. No. 19 ¶¶ 2, 4.)

In February 2020, a fire damaged Rivington's building, forcing it to close for repairs until September 2020. (*See* Dkt. No. 19 ¶¶ 5, 12.) On the day of the fire, Lure canceled its contract with Rivington. (*See* Dkt. No. 19 ¶ 6.) Rivington subsequently sought to recover from American Fire all of the monthly fees it would have received from Lure had the contract continued through to December 2028. (*See* Dkt. No. 19 ¶ 8.) The Policy stated that American Fire would "pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" (Dkt. No. 19 ¶ 10.) Business income referred to "Net Income . . . that would have been earned or incurred if no physical loss or damaged had occurred." (*Id.*) The Policy also included an exclusion relevant here: American Fire would "not pay for . . . cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of 'operations,' we will cover such loss that affects your Business Income during the 'period of restoration.'" (Dkt. No. 19 ¶ 11.) American Fire interpreted the Policy as requiring it to pay Rivington only the monthly fees it would have received during the "period of restoration." American Fire accordingly paid Rivington what it contends was this amount instead of the entire remaining value of the Lure contract. (*See* Dkt. No. 19 ¶ 15.)

Rivington initiated this action in February 2021. (Dkt. No. 1.) Both parties now seek partial summary judgment as to whether the Policy entitles Rivington to the value of the Lure contract after the period of restoration. (Dkt. No. 16; Dkt. No. 23.)

## II.     Legal Standard

A party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law." *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1087946, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists, *id.*, and in assessing whether the movant has carried this burden, a court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his or her favor," *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 166 (S.D.N.Y. 2006).

### III. Discussion

Because the Court is sitting in diversity, it must first determine the appropriate choice of law. Federal courts apply "state substantive law and federal procedural law" when sitting in diversity. *First Roumanian Am.Congregation v. GuideOne Mut. Ins. Co.*, 862 F. Supp. 2d 293, 304 (S.D.N.Y. 2012) (quoting *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996)). In determining which state's substantive laws apply, federal courts defer to the choice of law rules of their forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). New York law considers the place of negotiation of the contract, the domicile of the contracting parties, and location of the subject matter of the contract. *See Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 371 (1994). Because this case involves a New York insured and claims for property damage to a New York property, New York substantive law applies. *See Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145 (2d Cir. 2003); *Lighton Indus. v. Allied World Nat'l Ass. Co.*, 348 F. Supp. 3d 167, 182–84 (S.D.N.Y. 2018).

Interpretation of an insurance agreement is a question of law. *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 93 (2d Cir. 2018). Insurance agreements are subject to the same

3

principles of construction as other contracts. *Broadway Nat'l Bank v. Progressive Cas. Ins. Co.*, 775 F. Supp. 123, 127 (S.D.N.Y. 1991). "As with most contracts, where an insurance policy's terms are clear and unambiguous, they must be so read." *Bd. of Educ. v. CNA Ins. Co.*, 647 F. Supp. 1495, 1502 (S.D.N.Y.1986), *aff'd*, 839 F.2d 14 (2d Cir. 1988). The Court will interpret an insurance agreement in light of "common speech" and "the reasonable expectation and purposes of the ordinary businessman when making an ordinary business contract." *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y.46, 51 (1918). For the Court to enforce an exclusion in an insurance agreement, however, the insurer must establish that the exclusion: "(1) is stated in clear and unmistakable language"; (2) is subject to no other reasonable interpretation; and (3) applies in the particular case." *Nat'l Union Fire Ins. Co. v. TransCanada Energy USA, Inc.*, 28 N.Y.S.3d 800, 807 (N.Y. Sup. Ct. 2016) (internal quotation marks omitted), *aff'd sub nom.*, 61 N.Y.S.3d 4 (1st Dep't 2017).

The Policy terms unambiguously do not cover the remaining value of the Lure contract after Rivington's period of restoration. The Policy provides that American Fire will pay for the "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'" (Dkt. No. 19 ¶ 10.) Business income is defined as "[n]et income . . . that would have been earned or incurred if no physical loss or damage had occurred." (*Id.*) Read together, these terms obligate American Fire to pay Rivington the net income it would have earned *only during the period of restoration* but for the necessary suspension of its business. And these terms plainly do not require American Fire to provide the relief that Rivington requests — income it would have earned *after the period of restoration* but for the necessary suspension of its business. It is worth noting that the parties dispute when, exactly, the period of restoration ended. But this question is irrelevant to resolution of the specific dispute

4

presented on these motions. Whatever date marked the end of the restoration period, Rivington is not entitled to the Lure contractual proceeds it would have received after that date.

Indeed, an exclusion within the Policy explicitly forecloses the relief that Rivington seeks. The Policy stated that American Fire would not pay for the cancellation of any contract, with an important caveat: if the cancellation was "directly caused by the suspension of 'operations," [American Fire] will cover such loss that affects your Business Income during the 'period of restoration.'" (Dkt. No. 19 ¶ 11.) Under this caveat to the exclusion, Rivington could — and did — recover Lure contractual proceeds it would have earned during the restoration period.[1] There are no other caveats, however, to the Policy's otherwise blanket exclusion of contractual proceeds. The language of the Policy's exclusion — "We will not pay for . . . cancellation of any license, lease or contract" (*see id.*) — is unmistakable and is not subject to any other reasonable interpretation. The Policy exclusion thus bars Rivington from recovering contractual proceeds after the restoration period.

Rivington's arguments for why it is entitled to the entire value for the Lure contract are unavailing. The crux of Rivington's position is that the Policy entitles an insured to money it "earned" during the period of restoration, even if the insured would have received that money after the restoration period. (*See* Dkt. No. 23-1 at 10.) The Court agrees. Nothing in the Policy limits recovery to business income that was both earned and *due* during the period of restoration. But Rivington fails to explain what "services [it] actually performed" during the period of restoration that legally entitled it to the entire value of the Lure contract. *Bernstein Liebhard LLP v. Sentinel Ins. Co., Ltd.*, 78 N.Y.S.3d 339 (1st Dep't 2018). Rivington earned fees for

---

[1] Because the parties apparently dispute when the restoration period ended, the Court refrains from reaching a conclusion as to whether Rivington received *all* of the contractual proceeds it was entitled to.

providing advertising space to Lure each month. It necessarily follows then that Rivington could not have earned fees — during the period of restoration — for all of the months after the period of restoration. Whether "[t]he entire contract was terminated within the period of restoration as a direct result of the [fire]," as Rivington asserts, is irrelevant. (Dkt. No. 23-1 at 1.) Rivington is therefore entitled to only the Lure contractual proceeds for the months during the period of restoration as a matter of law.

### IV.   Conclusion

For the foregoing reasons, American Fire's motion for partial summary judgment is GRANTED and Rivington's cross-motion is DENIED.[2]

American Fire shall file an answer to the complaint within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 16.

SO ORDERED.

Dated: March 31, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[2] American Fire also moved to dismiss Rivington's claims for extracontractual damages. (Dkt. No. 6.) Rivington seeks consequential damages, including litigation costs for bringing this suit, because American Fire "breached the covenant of good faith and fair dealing . . . by not paying the claim in a timely manner" and "by its failure to pay the claim in its entirety." (Dkt. No. 7-1 ¶ 17–19.) But New York law disallows breach of covenant of good faith and fair dealing claims when they are based upon the same facts as a breach of contract claim. *See Cruz v. FXDirectDealer*, LLC, 720 F.3d 115, 125 (2d Cir. 2013). Rivington fails to allege any facts independent from its breach of contract claim to support its breach of the covenant of good faith and fair dealing claim. Moreover, to the extent that Rivington asserts that American Fire breached the covenant of good faith and fair dealing by not reimbursing the remaining value of the Lure contract, Rivington is incorrect as a matter of law for the reasons set forth in this Opinion and Order. The Court therefore grants American Fire's motion for partial dismissal as well.